**Application of Leo F. RYAN.**
**Pat. Appeal No. 8982.**

United States Court of Customs
and Patent Appeals.
July 19, 1973.

David A. Anderson, Raymond P. Niro, Chicago, Ill. (Hume, Clement, Hume & Lee, Ltd., Chicago, Ill.,), attorneys of record, for appellants.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. William H. Beha, Jr., Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, and LANE, Judges, and ALMOND, Senior Judge.

LANE, Judge.

This appeal is from the decision of the Patent Office Board of Appeals sustaining the § 103 rejection of claims 1, 2, 3 and 5 of appellant's application Serial No. 673,111 filed October 5, 1967. The board concluded that the subject matter would have been obvious to one of ordinary skill in the art in light of the state of the art admitted by appellant. No references were cited. We affirm the board's decision.

The claims are directed to an improvement in the method of continuously regenerating exhausted cationic ion exchange resin particles. Using the purification of water as an example of a cationic ion exchange process, undesired ions, such as calcium and magnesium, are removed by contact with a resin which gives up more desirable ions, such as hydrogen ions, in exchange for the undesired ions. After a time, the resin must itself be regenerated by replacement of the captured ions with new hydrogen ions. Once regenerated, the ion exchange resin may be washed and returned to service. On a practical, commercial level, the initial exchange, regeneration of the resin, washing of the regenerated resin, and return of the washed, regenerated resin to ion exchange service are carried out continuously.

As described in appellant's specification and brief on appeal, it was known prior to appellant's invention to use a regeneration column in which exhausted resin particles were introduced near the top of the column and carried downward while regenerant solution, such as sulfuric acid or hydrochloric acid, was countercurrently passed through the column. The chemical process occurring in such a situation was the exchange of hydrogen ions coming from the acid for the mineral ions, such as calcium or magnesium, picked up by the resin during the previous ion exchange step. The continuous downward flow of resin in the regeneration column was accomplished by the recirculation of previously used regenerant solution. The specification more particularly describes the prior practice as follows:

In charging the column with exhausted resin particles from the reservoir, a piston-type action is employed whereby the non-turbulent, downward flow of liquid within the column allows exhausted resin particles to flow down into the column. Prior to the present invention, such downward flow was created by depressurizing the column and withdrawing liquid from a lower portion while allowing the re-introduction of exhausted regenerant near the top. The exhausted regenerant was introduced from a surge tank which retained a sufficient volume before disposing of it in the waste drain. While such a procedure is satisfactory for most combinations of resin and regenerant, severe difficulties are encountered where a relatively insoluble material is formed

during the regeneration process. Commonly, such a material is formed where sulfuric acid is employed to regenerate hydrogen-form strong acid cation exchange resin particles. The exhausted resin retains calcium ions, removed from the raw water in the service column, which are exchanged for hydrogen ions in the sulfuric acid, forming a supersaturated solution of calcium sulfate. Holding the exhausted regenerant in a surge tank, and agitating it by re-introducing it into the column, encourages precipitation of the calcium sulfate. The introduction of seed crystals into the column causes further precipitation, agglomerating with the resin particles and eventually. plugging the column. The precipitate may also plug the filter used at the regenerant outlet, interfering with the movement of regenerant.

Because of the problem of calcium sulfate precipitation, it has been considered difficult to employ sulfuric acid in the countercurrent regeneration of hydrogen-form cationic ion exchange resins. Instead, hydrochloric acid has been used. Although the use of hydrochloric acid avoids the precipitation of insoluble materials, it is much more expensive and therefore less desirable than sulfuric acid.

Appellant overcomes the problems theretofore encountered by replacing the previously used regenerant solution which carries the resin through the column with a liquid described generically in the specification as follows:

[I]t must be free of insoluble materials that could cause precipitation within the column, as well as materials that would react within the column to form a precipitate. Normally the second liquid will be water or water containing an additive to inhibit precipitation.

That modification of the prior art process enables the use of the less expensive sulfuric acid. In the claims, the liquid is limited to water.

Claim 1 reads as follows:

1. In the continuous regeneration of cationic ion exchange resin particles with sulfuric acid in a column normally regenerating said particles by an upward flow of regenerant between regenerant inlet and outlet means wherein exhausted resin particles are periodically introduced into an upper portion of said column and liquid is simultaneously removed at a drain point, *the improvement comprising* introducing water into said column at a point above said drain point during the introduction of said exhausted resin particles and at a rate sufficient to maintain said column filled with material, said water being free of insoluble materials that could cease [cause?] precipitation within said column, and said water also being free from materials that can react within said column to form a precipitate. [Emphasis added.]

Dependent claims 2, 3 and 5 impose limitations which appellant does not separately argue.

The Examiner's Answer states as follows:

In the original specification, in each amendment, and in the Brief, applicant has acknowledged that the continuous countercurrent ion exchange system generally is known and that an auxiliary liquid is used to assure smooth resin transfer to the regenerating column in such systems. *It is further acknowledged that the cause of clogging which has been experienced as a problem in such systems when sulfuric acid regenerant is used was known to be the precipitation of insoluble sulfates, particularly calcium sulfate.*

* * * [Appellant's discovery was] that precipitation of calcium sul-

fate in the regeneration column is less likely to occur if water is substituted for the acidic calcium sulfate solution in the procedure described above. It is the examiner's position that this "discovery" is at once obvious to one of ordinary skill in the art of chemistry. That is to say, the solution to the problem is plain upon the face of the description of the problem. [Emphasis added.]

The board generally agreed with the examiner, holding as follows:

The alleged invention lies in the utilization of water in a cation ion exchange process whereby undesirable precipitates are eliminated by introducing water into the column at the time the liquid from a surge tank is being drained off. Appellant's main contention is that he discovered the source of the problem, i.e., precipitation occurring in the surge tank, and then solved the problem, i.e., the avoidance of reintroducing the contents of the surge tank back into the column. Instead, water is introduced above the drain point. It would appear to be obvious that any liquid containing spent sulfuric acid regenerant would contain sulfate precipitates. It would therefore appear to be obvious to those skilled in the art to endeavor to remove the source of the difficulty, the simplest expedient being to flush the resin exchange bed with water. * * * The specific claim language is not even directed to the prior art problem of utilizing a surge tank containing spent regenerant. We agree with the examiner that the claimed process would be obvious to those of ordinary skill in the art.

## OPINION

Appellant's position is that both the board and the examiner erroneously assumed that the source of the difficulties encountered when sulfuric acid was used was known and then found the solution obvious. It is argued that in fact it was not known that holding used regenerant solution in a surge tank was responsible for the clogging of the regeneration column, and appellant urges that absent knowledge of the source of the problem, its solution would not have been obvious to one skilled in the art. The fact that those skilled in the art turned away from the use of sulfuric acid is cited as evidence of the nonobviousness of the claimed subject matter.

Since it is the state of the art as admitted by appellant that constitutes the sole evidence of the prior art, it is important to carefully identify what it is that appellant has admitted. The examiner was initially uncertain as to the scope of the admitted prior art. He cited several references and specifically relied upon them in the event that the appellant had not admitted that the "problem * * * [of insoluble or slightly soluble material being formed in the regenerant] was understood previously." In response, appellant discussed the references and stated that "it is agreed that the art clearly recognized the problem of calcium sulfate precipitation * * *." However, appellant argued at the same time that:

[T]he belief was that it was practically impossible to employ sulfuric acid as the regenerant since the production of insoluble sulfates inevitably resulted. The retention of exhausted regenerant in the surge tank was not recognized as the culprit, since the surge tank contains no higher concentration of calcium sulfate than does the exhausted regenerant just before it leaves the upper portion of the regenerant to column.

The examiner assumed that it would have been obvious to eliminate a source of sulfate precipitates, i.e., the used regenerant, once given the problem of sulfate precipitation in the regeneration column. Appellant argues in response that since the concentration of sulfates in the regenerant near the top of the

column would be the same as that of the recirculated regenerant, those skilled in the art would not be led to the elimination of recirculated regenerant. In other words, appellant in effect contends that there would be no basis for distinguishing between the fresh regenerant used to revitalize the resin and the recirculated regenerant used to carry the resin through the column as a source of deleterious precipitates. Appellant finds corroboration for that conclusion in the fact that those skilled in the art turned away from the use of sulfuric acid altogether.

We think the examiner and the board drew a fair inference that regardless of the concentrations of sulfates in the fresh and used regenerant streams, the addition of a recirculation stream rich in sulfates would necessarily aggravate the known problem of sulfate precipitation and logically concluded that the elimination of that stream would have been an obvious manner of ameliorating, to a large extent, the problem. We also view the substitution of a non-precipitating, inert liquid, such as water, as an obvious modification given that the problem is precipitation and that the sole function of the stream is to physically carry the resin through the column rather than to chemically interact with the resin. For these reasons, we conclude that the claimed subject matter would have been obvious in the sense of § 103.

Although appellant strenuously asserts that the fact that the specific source of the problem has been discovered has not been given proper consideration by the examiner and board, we think it apparent that the claimed improvement is an obvious expedient given the known *general* source of the problem, sulfate precipitation, and we fail to see how the discovery of the *specific* source of the problem, holding of regenerant in the surge tank, tends to render the adoption of that expedient nonobvious.

The decision of the board is affirmed.

Affirmed.